Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| RICARDO HERNÁNDEZ ROSSY<br><br>Demandante-Apelante<br><br>Vs.<br><br>BRIDGE SECURITY SERVICES, INC. Y OTROS<br><br>Demandados-Apelados | TA2026AP00353 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm. BY2020CV03447<br><br>Sala: 505<br><br>Sobre: DAÑOS Y OTROS |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Cruz Hiraldo y el Juez Sánchez Báez.

Cruz Hiraldo, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 19 de mayo de 2026.

La parte apelante, el señor Ricardo Hernández Rossy, solicita la modificación de la *Sentencia Parcial* emitida y notificada el día 20 de enero de 2026 por el Tribunal de Primera Instancia, Sala de Bayamón. El tribunal, luego de evaluar las mociones dispositivas presentadas por las partes, dictó sentencia sumaria a favor de la parte apelada, la Universidad de Puerto Rico. Esto al desestimar las causas de acción fundamentadas en alegaciones sobre supuestas represalias en el entorno laboral bajo la *Ley de Represalias,* Ley Núm. 115-1991, 29 LPRA sec. 194 *et seq.,* y una reclamación de salarios de empleado bajo la *Ley de Salario Mínimo, Vacaciones y Licencia por Enfermedad de Puerto Rico*, Ley Núm. 180-1998, 29 LPRA sec. 250b *et seq.*; y la *Ley para Establecer la Jornada de Trabajo en Puerto Rico,* Ley Núm. 379 de 15 de mayo de 1948, 29 LPRA sec. 271 *et seq.*

Por los fundamentos expuestos en esta sentencia, *confirmamos* la sentencia sumaria apelada.

**-I-**

El 2 de noviembre de 2020 la parte apelante presentó *Demanda* en contra de la parte apelada, y en contra de Bridge Security Services, Inc., al amparo del procedimiento sumario laboral establecido en la *Ley de Procedimiento Sumario de Reclamaciones Laborales*, Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 LPRA sec. 3118, *et seq.* En suma, la premisa básica de las reclamaciones esgrimidas en las alegaciones está cimentada sobre la caracterización del apelado y del codemandado Brigde Secrutity Services, Inc., como "el patrono del demandante". Transcribimos algunas de las alegaciones como pertinentes e ilustrativas al motivo de pedir del apelante:

10. El Sr. Quiñones también le indicó al demandante que el Reglamento de Bridge no prohíbe el uso de uñas pintadas, pero, como la UPR estaba exigiendo que se lo removiera así debía hacerlo.

11. Así las cosas, el 11 de octubre de 2020, el demandante se presentó a trabajar en su horario regular de 9:30 pm a 6 am en la UPR de Bayamón. El Sr. Edinuel Soto, en su capacidad de supervisor de Bridge Security, actuando como tal y a nombre de Bridge, le ordenó retirarse del puesto por no haberse quitado el color negro de sus uñas.

12. Mediante reporte, el Sr. Soto documentó lo anterior, aduciendo que ello fue requerido por el Sr. José Ortiz, Jefe de los supervisores de seguridad de la Universidad de Puerto Rico, actuando como tal y a nombre de la UPR; el Sr. Ortiz, a su vez supervisa a Bridge Security y al demandante como oficial y empleado de la UPR, Recinto de Bayamón.

13. El 12 de octubre de 2020, el Teniente Fernando Flores, supervisor de puesto en Bridge, actuando como tal y a nombre de Bridge, le informó al Sr. Hernández Rossy que podía reportarse ese día a trabajar si se removía el esmalte de sus uñas.

14. Ante ello, el 12 de octubre de 2020 los abogados suscribientes enviaron carta a Bridge Security, por medio del Sr. David Díaz, solicitando el cese y desista de los anteriores actos.

[…]

22. El demandante, bajo protesta aceptó quitarse el esmalte de las uñas y costear la prueba del COVID-19, para poder volver a trabajar en UPR Bayamón, por su necesidad de ganarse el sustento. Firmó el horario que le asignaron de 9:30 pm a 6:00 am de domingo a jueves, comenzando el domingo 18 de octubre de 2020.

23. El 16 de octubre de 2020, el demandante acudió y se hizo la prueba serológica del Covid-19, según requerido por Bridge, a su costo, bajo protesta, saliendo negativo. El demandante llevó el resultado y el recibo del pago a Bridge ese mismo día.

24. Poco después, ese mismo 16 de octubre de 2020, el Sr. Díaz de Bridge, actuando a nombre de Bridge, le informó al demandante que la UPR, a través del Sr. Ortiz, requirió que el demandante trabajara el horario de por la mañana; ello, a pesar de que Bridge acababa de requerir que firmara el turno de por la noche.

25. Tal fue el trauma, indignación, ansiedad, depresión, frustración e impotencia que le causó todos los actos abusivos, discriminatorios, ilegales y en represalia antes relatados que, el demandante tuvo que acudir al médico (Dr. Juan Ocasio) quien le diagnosticó trastorno de ansiedad histérica y lo envió a descansar del 17 al 23 de octubre de 2020.

26. El 22 de octubre de 2020, el demandante tuvo que acudir ante una psicóloga dado su estado emocional, todo ello causado por los demandados.

Alegó ser víctima de discrimen por razón de sexo pues "[l]as partes demandadas NO tenían razón alguna que justificara el requerirle al demandante removerse el esmalte de sus uñas, lo cual se permite tener a las compañeras mujeres". Agregó haber sufrido represalias en el lugar de trabajo porque "la determinación de trasladarlo y reubicarlo de lugar de trabajo y obligarlo a costearse la prueba del COVID-19, constituyen represalias por este negarse a aceptar semejante trato y a quitarse el esmalte y color de sus uñas y por comunicárselo a su patrono". También alegó difamación por parte de su patrono, Bridge Security Services y la

parte apelada pues según el apelante soportó "que lo difamaran en una reunión en la cual Iván Quiñones y otros supervisores sostuvieron en horas de la mañana del 13 de octubre de 2020, en la cual también estuvo presente el Sr. José Ortiz, supervisor de la codemandada UPR, entre otros". Reclamó: (1) $100,000 en concepto de daños y angustias mentales; (2) $348 por deuda de salario más la penalidad legal; (3) la devolución de $35 del costo de la prueba del Covid-19; y (4) honorarios de abogado.

El 7 de enero de 2021, la parte apelada solicitó la desestimación del pleito y la conversión del trámite a ordinario. En resumen, la parte apelada fundamentó su petición de desestimación en "que entre la UPR y el demandante no existe una relación de empleo por lo que no se sustenta una reclamación de índole laboral en su contra" y que la *Demanda* "deja de exponer una reclamación que amerite la concesión de un remedio al no contener alegación contra la UPR sino contra empleados y oficiales de la codemandada Bridge Security Services, Inc." El 1 de julio de 2022, notificada el 5 de julio de 2022, el foro de primera instancia dictó sentencia parcial, en la cual (i) desestimó la causa de acción de discrimen a favor de la parte apelada; y (ii) ordenó la conversión del procedimiento sumario a ordinario.

Superados otros trámites, el 10 de octubre de 2024, la parte apelada presentó una solicitud de desestimación sumaria en cuanto a la causa de acción de represalias (*Ley de Represalias*, Ley Núm. 115-1991, 29 LPRA sec. 194 *et seq.*) y la reclamación de salarios (*Ley de Salario Mínimo, Vacaciones y Licencia por Enfermedad de Puerto Rico*, Ley Núm. 180-1998, 29 LPRA sec. 250b et seq.; y la *Ley para Establecer la Jornada de Trabajo en Puerto Rico,* Ley Núm. 379 de 15 de mayo de 1948, 29 LPRA sec. 271 *et seq.*). En esencia, mediante su propuesta de hechos materiales invitó al tribunal a concluir, como cuestión de derecho,

que, no era patrono de la parte apelante. Por tanto, las causas de acción antes referidas no procedían en su contra. La parte apelante presentó un escrito en oposición y luego las partes intercambiaron una réplica y una dúplica en cuanto a la solicitud de desestimación sumaria promovida. El 20 de enero de 2026, el tribunal emitió la sentencia parcial objeto de este recurso. Desestimó las reclamaciones de represalias, y salarios. El foro primario estableció los siguientes hechos como incontrovertidos:

1) BSSI es una compañía autorizada a hacer negocios en Puerto Rico, que ofrece servicios de seguridad y guardia privada, entre otros.

2) El 27 de agosto de 2020, BSSI suscribió un Contrato de Servicios Misceláneos No Personales (en adelante "Contrato de Servicios") con la UPR, mediante el cual el primero habría de ofrecer al segundo sus servicios de guardia privada en las facilidades del Recinto Universitario de Bayamón.

3) El Contrato de Servicios entre BSSI y la UPR entró en vigor a partir del 1 de septiembre de 2020.

4) En el Contrato de Servicios se aclara, que los guardias de seguridad de BSSI habrán de rendir sus servicios en calidad de contratistas independientes, y que el Contrato no habrá de conceder, ni a BSSI, ni a sus empleados, los derechos y prerrogativas que las leyes y reglamentos proveen para los empleados regulares de la UPR.

5) La UPR es un patrono que ofrece igualdad de oportunidades de empleo y cuenta con una política que prohíbe el discrimen en el lugar de trabajo, incluyendo discrimen por razón de sexo.

6) La UPR no supervisaba al señor Hernández en el desempeño de sus funciones como guardia de seguridad. Tal y como se indica en el contrato de servicios de seguridad, BSSI es responsable de la supervisión de todo su personal de seguridad, y por ello, contaba con supervisores en las facilidades de la UPR.

7) El 11 de junio de 2018, el señor Hernández suscribió un contrato de empleo con su

patrono, BSSI, para fungir como oficial de seguridad.

8) Entre el 11 de junio de 2018 y 6 de noviembre de 2019, el señor Hernández fue asignado a trabajar en Plaza Antillana.

9) Entre el 10 de noviembre de 2019, el demandante fue asignado a trabajar en la Recinto Universitario de Bayamón.[1]

10) Entre el 11 de diciembre de 2020 y el 30 de junio de 2021, el señor Hernández fue asignado a trabajar en la Administración de Tribunales localizada en el World Plaza en Hato Rey.

11) El señor Hernández nunca ha suscrito un contrato de servicios profesionales con la UPR conforme a la Certificación emitida el 8 de octubre de 2024 por Sra. Carina L. Figueroa Rodríguez (señora Figueroa), Directora de la Oficina de Recursos Humanos de la UPR en Bayamón.

12) El señor Hernández nunca ha suscrito un contrato de empleo con la UPR conforme a la Certificación emitida el 8 de octubre de 2024 por señora Figueroa, Directora de la Oficina de Recursos Humanos de la UPR en Bayamón.

13) La UPR no participa en el proceso de reclutamiento de los empleados de BSSI.

14) La UPR no participa en el proceso de evaluación de los empleados de BSSI.

15) En todo momento relevante a la presente reclamación, el Sr. Iván Quiñones (señor Quiñones) era empleado de BSSI y fungía como supervisor del señor Hernández durante su asignación de trabajo en la UPR.

16) En el mes de octubre de 2020, el señor Hernández se presenció a la UPR con las uñas pintadas de negro.

17) El señor Quiñones le notificó al querellante que debía de cumplir con las normas de la UPR y removerse el esmalte de uñas color negro.

18) El señor Hernández se negó a removerse el esmalte de uñas negro.

---

[1]Aclaramos en este momento que, en realidad la parte apelante estuvo asignada al recinto de Bayamón desde el 10 de noviembre de 2019 hasta el mes de octubre de 2020, cuando fue reasignado.

19) Como resultado de lo anterior, el señor Hernández fue removido de su asignación de trabajo en la UPR.

20) Subsiguientemente, BSSI le ofreció otras asignaciones de trabajo al señor Hernández con otros clientes.

21) El 12 de octubre de 2020, los abogados del señor Hernández enviaron una carta a Bridge, quejándose y cuestionando la legalidad de varios asuntos.

22) El 13 de octubre de 2020, se llevó a cabo una reunión en la cual estuvieron presentes el señor Quiñones de BSSI, el Sr. José Ortiz (señor Ortiz) de la UPR y varios empleados de BSSI.

Como hechos en controversia, el tribunal dispuso los siguientes:

1) Si existía envolvimiento de la UPR en ciertos asuntos o procesos laborales del BSSI relacionado al señor Hernández a pesar de este último no ser empleado de la UPR.

2) Si el presunto envolvimiento de la UPR incidía en las determinaciones de BSSI sobre el señor Hernández.

3) Si los actos de la UPR presuntamente a través de BSSI en contra del señor Hernández fueron negligentes.

4) Lo ocurrido durante la reunión del 13 de octubre de 2020.

5) Si las expresiones del señor Ortiz, empleado de la UPR, emitidas durante la reunión celebrada el 13 de octubre de 2020 fueron de carácter difamatorio.

6) Los daños, si alguno, sufridos por el demandante como consecuencia de los actos aludidos.

El foro primario concluyó que, la parte apelada no es patrono del apelante. Empero, denegó la desestimación sobre la causa por difamación en contra de la apelada. La parte apelante solicitó reconsideración sobre la desestimación de las reclamaciones de salarios, y represalias, pero el tribunal declaró no ha lugar la petición. La parte apelante comparece y señala los siguientes errores:

Erró el Honorable TPI y abusó de su discreción, al decidir y encontrar probado que la Apelada UPR no supervisaba al Apelante, contrario a lo que el propio contrato de servicios otorgado entre las Recurridas Bridge Security Services y la UPR estipulaba y ordenaba.

Erró el Honorable TPI y abusó de su discreción, al emitir una Sentencia Parcial y archivando las causas de acción sobre represalias bajo la Ley Núm. 115-1991 y la reclamación de salarios bajo las leyes Núm. 180-1998 y Núm. 379-1948, al existir hechos materiales en controversia, tal cual surge del contrato suscrito entre Bridge Security Services y la UPR y la Declaración Jurada ofrecida por el Apelante. [Ent. #182, Exh. 1, inciso 5].

Debido al primer y segundo error cometido, erró el Honorable TPI y abusó de su discreción, al archivar la causa de acción sobre represalias bajo la Ley Núm. 115-1991.

Debido al primer y segundo error cometido, erró el Honorable TPI y abusó de su discreción, al archivar la causa de acción sobre la reclamación de salarios bajo las leyes Núm. 180-1998 y Núm. 379-1948.

La parte apelada compareció mediante alegato escrito. Procedemos a resolver con el beneficio de la comparecencia de las partes, el contenido del expediente electrónico, y el Derecho aplicable.

## -II-

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, regula el procedimiento relacionado a la presentación, consideración y disposición de una moción de sentencia sumaria. *Cruz, López v. Casa Bella y otros*, 213 DPR 980, 993 (2024); J.A. Cuevas Segarra, *Tratado de derecho procesal civil*, 2da ed., Estados Unidos, Publicaciones JTS, 2011, T. III, pág. 1038. Este mecanismo procesal faculta la solución rápida, justa y económica de los casos en los que no existen hechos materiales en controversia y sólo reste aplicar el derecho. *Oriental Bank v. Caballero García*, 212 DPR 671, 678-679 (2023); *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015). Así pues, de la prueba que acompaña la

solicitud de sentencia sumaria debe surgir la inexistencia de controversia sobre los hechos medulares del caso. *Aponte Valentín et al. v. Pfizer Pharm.*, 208 DPR 263, 277 (2021); *Zambrana García v. ELA et al.*, 204 DPR 328, 341-342 (2020). En otras palabras, el tribunal procederá a dictar la sentencia solicitada si "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que como cuestión de derecho el tribunal debe dictar sentencia sumaria a favor de la parte promovente". Regla 36.3(e) de Procedimiento Civil, 32 LPRA Ap. V. La parte que promueve la sentencia sumaria tiene el deber de exponer su derecho con claridad, y demostrar que, no existe controversia sustancial sobre algún hecho material. *Oriental Bank v. Caballero García, supra,* pág. 679; *Meléndez González et al. v. M. Cuebas, supra,* pág. 110.

Ciertamente, "[é]sta puede dictarse a favor o en contra del promovente según proceda en derecho". Cuevas Segarra, *op. cit.,* pág. 1040. La Regla 36.3(c) de Procedimiento Civil, 32 LPRA Ap. V, provee para que el tribunal dicte sentencia sumaria a favor del promovente --de proceder en derecho-- si la parte contraria no responde de forma detallada y específica a una solicitud debidamente formulada. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 432 (2013). El hecho de presentar una moción de sentencia sumaria no garantiza la solución sumaria del pleito a favor del promovente. *Luan Invest. Corp. v. Rexach Const. Co.*, 152 DPR 652, 666 (2000). "[E]l tribunal no deberá emitir una sentencia sumaria cuando: (1) existan hechos materiales controvertidos; (2) haya alegaciones afirmativas en la demanda que han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material, o

(4) como cuestión de derecho, ésta no proceda". *Serrano Picón v.*
*Multinational Life Ins.*, 212 DPR 981, 992 (2023).

Los foros apelativos nos encontramos en la misma posición
que los foros de primera instancia al evaluar la procedencia de una
solicitud de sentencia sumaria. *Cruz, López v. Casa Bella y otros*,
*supra*, pág. 994; *Birriel Colón v. Econo y otro*, 213 DPR 80, 91
(2023); *Oriental Bank v. Caballero García*, *supra*, pág. 680. Sin
embargo, nuestra función está limitada a: (1) considerar los
documentos que se presentaron ante el foro de primera instancia;
(2) determinar si existe alguna controversia genuina de hechos
materiales y esenciales, y (3) comprobar si el derecho se aplicó de
forma correcta. *Birriel Colón v. Econo y otro*, *supra*; *Segarra Rivera*
*v. Int'l. Shipping et al.*, *supra*, pág. 981; *Meléndez González et al. v.*
*M. Cuebas*, *supra*, págs. 114-116.

### -*III*-

Los hechos esenciales y pertinentes para la correcta
disposición del presente recurso apelativo no están en
controversia. El 11 de junio de 2018, el apelante firmó un contrato
de empleo con Bridge Security Services, Inc. (Bridge) para trabajar
como guardia u oficial de seguridad. La codemandada, Bridge, es
una compañía de seguridad que, al momento de los hechos
relatados en la demanda, tenía un contrato con la parte apelada.
El primero ofrecía, a través de sus empleados, servicios de guardia
de seguridad privado en las facilidades del Recinto Universitario de
Bayamón de la Universidad de Puerto Rico. Bridge asignó al
apelante a servir como guardia de seguridad en el Recinto
Universitario de Bayamón. El 11 de octubre de 2020, la parte
apelante llegó al Recinto Universitario de Bayamón con sus uñas
pintadas de negro. A petición del personal del recinto, Bridge
prohibió al apelante el uso de esmalte de uñas negro durante
horas de trabajo. La parte apelante rehusó cumplir con la

instrucción de Bridge. En consecuencia, la parte apelante fue asignado a trabajar para otro cliente de Bridge donde el uso del esmalte color negro no fuera causa de queja. La parte apelante entabló la presente reclamación judicial en contra de Bridge, y en contra de la parte apelada, alegó discrimen por razón de sexo, represalias, salarios adeudados y difamación en contra de ambos El tribunal apelado desestimó la causa de discrimen por razón de sexo a favor de la parte apelada. Ese referido dictamen adquirió carácter final y firme.

En la moción de sentencia sumaria objeto de consideración, la parte apelada solicitó la desestimación sumaria de la acción de: (1) represalias; (2) salarios adeudados; y (3) difamación. El foro primario desestimó las acciones de represalias y salarios. Fundamentó la sentencia parcial apelada sobre la premisa de la definición de patrono colegida en la *Ley de Represalias*, Ley Núm. 115-1991, 29 LPRA sec. 194 *et seq.*; en la *Ley de Salario Mínimo, Vacaciones y Licencia por Enfermedad de Puerto Rico*, Ley Núm. 180-1998, 29 LPRA sec. 250b et seq.; y en la *Ley para Establecer la Jornada de Trabajo en Puerto Rico*, Ley Núm. 379 de 15 de mayo de 1948, 29 LPRA sec. 271 *et seq.* Concluyó que, la parte apelada no era patrono del apelante, y desestimó las causas.

Examinados los hechos materiales pertinentes a las causas relacionadas, la única controversia para la correcta disposición sumaria del recurso era si la parte apelante era empleado por la parte apelada para rendir servicios de oficial de seguridad en su recinto. Es un asunto de estricto derecho que estamos en posición de resolver. Un análisis de los hechos incontrovertidos, y la evidencia admisible en evidencia que los apoya, nos lleva a concluir que la parte apelante, no era empleado de la parte apelada. Veamos.

El 11 de junio de 2018, el apelante firmó un contrato de empleo con Bridge para trabajar como guardia u oficial de seguridad. El término inicial del contrato de empleo fue un período probatorio de nueve meses, relación de trabajo que continuó indefinidamente por varios años. Las partes contratantes en aquel negocio fueron la parte apelante y Bridge. La parte apelante rendía servicios de guardia u oficial de seguridad a nombre de Bridge a cambio de un sueldo fijo sufragado por Bridge, y otros beneficios no especificados pero requeridos por nuestra legislación laboral. Igualmente, de los hechos materiales fuera de controversia surge que, era Bridge quien asignaba los trabajos a la parte apelante, esto según la necesidad del servicio y otras consideraciones laborales como, por ejemplo, en este caso, la queja de la parte apelada sobre el uso de esmalte de uña color negro durante horas de trabajo.

La legislación protectora del derecho al trabajo aplica únicamente a aquellas personas que están incluidas bajo la clasificación de empleado que se define como la "persona que rinde servicios a un patrono y a cambio recibe de éste un sueldo, salario, jornal, comisión, bono, adehala o cualquier otra forma de compensación". *Whittenburg v. Col. Ntra. Sra. del Carmen*, 182 DPR 937, 952 (2011). El artículo 4 de la *Ley de Salario Mínimo, Vacaciones y Licencia por Enfermedad de Puerto Rico*, Ley Núm. 180-1998, 29 LPRA sec. 250b, define empleado "como toda persona que ejerza, desempeñe o realice cualquier arte, oficio, empleo o labor bajo las órdenes o para beneficio de otro, a base de contrato de arrendamiento de servicios o mediante remuneración de alguna clase o promesa expresa o tácita de recibirla, en cualquier industria". El artículo 19 de la *Ley para Establecer la Jornada de Trabajo en Puerto Rico,* Ley Núm. 379 de 15 de mayo de 1948, 29 LPRA sec. 288, define empleado como "toda persona

natural que trabaje para un patrono y que reciba compensación por sus servicios". Por último, el artículo 2 de la *Ley de Represalias*, Ley Núm. 115-1991, 29 LPRA sec. 194a define empleado como "cualquier persona que preste servicios a cambio de salarios, o cualquier tipo de remuneración, mediante un contrato oral, escrito, explícito o implícito, sin distinción de la naturaleza de su puesto o clasificación, sea contratado de forma indefinida o por un tiempo determinado". Vemos que, todas las definiciones contienen un elemento básico común: el recibo de sueldo a cambio de un trabajo o servicio a favor de otro. En este caso la parte apelante prestó servicios de vigilancia y seguridad a favor de su patrono, Bridge, a cambio de un sueldo y beneficios marginales. No erró el foro primario al concluir que la parte apelante no es empleado de la parte apelada. Por tanto, las reclamaciones de represalia, y salarios no son oponibles a la parte apelada.

Los errores señalados por la parte apelante no fueron cometidos.

## *-IV-*

Por los fundamentos antes expuestos, las cuales hacemos formar parte de este dictamen, *confirmamos* la sentencia sumaria parcial apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones